UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID M.,[1] | ) |
|           Plaintiff, | ) No. 19 CV 5158 |
| v. | ) Magistrate Judge Young B. Kim |
| ANDREW M. SAUL, Commissioner of the Social Security Administration, | ) |
|           Defendant. | ) June 28, 2021 |

**MEMORANDUM OPINION and ORDER**

David M. ("David") seeks disability insurance benefits ("DIB"), claiming that he suffers from spinal disorder, degenerative disc disease, diabetes mellitus, hypertension, gastroesophageal reflux disease ("GERD"), organic mental disorder, affective disorder, personality disorder, and autistic disorder, which prevented him from engaging in full-time work from 2007 through 2012. Before the court are the parties' cross motions for summary judgment. For the following reasons, David's motion is granted, the government's is denied, and this matter is remanded:

**Procedural History**

David filed his DIB application in November 2015, alleging disability beginning on June 30, 2007. (Administrative Record ("A.R.") 15, 217-18.) The government denied his applications initially and on request for reconsideration. (Id. at 15, 65-72, 132-35, 140, 149-54.) David requested and received a hearing before an

---

[1] Pursuant to Internal Operating Procedure 22, the court uses only the first name and last initial of Plaintiff in this opinion to protect his privacy to the extent possible.

administrative law judge ("ALJ"), (id. at 155-72), and in December 2017, David appeared at the hearing with his attorney and a vocational expert ("VE"), (id. at 31-64). In May 2018 the ALJ issued an unfavorable decision, finding that David was not disabled from his alleged disability onset date, June 30, 2007, through December 31, 2012, the date last insured. (Id. at 15-24.) When the Appeals Council declined review, (id. at 1-6), the ALJ's decision became the final decision of the Commissioner, *see Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). David then filed this lawsuit seeking judicial review, and the parties consented to the court's jurisdiction. *See* 28 U.S.C. § 636(c); (R. 6).

**Facts**

David graduated from medical school, completed an internal medicine residency and infectious disease fellowship, and practiced medicine as a treating physician. (A.R. 313, 315.) He alleges that he is unable to sustain full-time, competitive work because he suffers from: autism spectrum disorder and Asperger's syndrome; attention deficit hyperactivity disorder ("ADHD"); major depressive disorder; type-1 diabetes; chronic neck pain; and cervical spondylosis. (Id. at 340-42.) David's medical records show that he suffered from spinal disorder, degenerative disc disease, diabetes mellitus, hypertension, GERD, organic mental disorder, affective disorder, personality disorder, and autistic disorder during the relevant time period. (Id. at 17, 360.)

2

### A. David's Hearing Testimony

David testified at the hearing that he graduated from medical school, completed residency and fellowship programs, and then went into private medical practice. (A.R. 36, 44.) He said that he was able to complete his education and training to become a physician, but he had to work longer hours to complete the same tasks as his peers. (Id.) He stopped working on June 20, 2007, and helped care for his son. (Id. at 36, 39.) David said he was "unable to keep pace with the practice" in which he was employed. (Id. at 43-44.) David explained that while his colleagues treated about 30 patients a day, he was able to treat only about 14 patients a day. (Id. at 44.)

In terms of impairments, David discussed his autism and ADHD and said he has difficulties with processing, executive functioning, organizing, prioritizing, concentrating, and timeliness. (Id. at 46-48.) David also said that he suffers from depression and was hospitalized in 2008 for treatment. (Id. at 53.) He described his depression as "immobilizing" and said at times, including in 2012, he would spend an entire day in bed. (Id. at 54.) Despite his limitations, David said he could perform simple jobs with limited social interaction and simple, one- or two-step tasks so long as he had supports to assist him. (Id. at 50.)

### B. VE's Testimony

A VE also testified at the hearing. He described David's prior work as being that of an internist and college or university faculty member, both of which are classified as skilled, light work under the Dictionary of Occupational Titles ("DOT").

3

(A.R. 58-59.) The ALJ posed a series of hypotheticals to the VE regarding whether someone with a specific hypothetical RFC could perform David's past work. (Id. at 59.) The first hypothetical posited an individual with an RFC for light work with limitations including: frequent climbing of stairs and ramps; never climbing ladders, ropes, and scaffolds; frequent balancing, stooping, kneeling, crouching, and crawling; no concentrated exposure to workplace hazards; simple, work-related judgment and decisions; simple, routine, repetitive tasks with few workplace changes and no production quotas; and brief, simple interaction with the public, coworkers, and supervisors. (Id. at 59-60.) The VE testified that no past relevant work was available to such a person, but that there were other jobs in the national economy, such as housekeeping cleaner, marker, and routing clerk that the person could perform. (Id. at 60.) The ALJ also asked the VE to assume the same limitations presented in the first hypothetical but added a limitation for being off task up to 15% of the workday and being absent from work two days a month. (Id.) The VE responded that no jobs would be available and that, based on his "professional experience . . . being off-task more than 10% of the work day or missing more than six to eight days a year would eliminate competitive employment." (Id.)

**C.      The ALJ's Decision**

The ALJ engaged in the standard five-step evaluation process in considering David's DIB claim. *See* 20 C.F.R. § 404.1520(a). At step one the ALJ found that David did not engage in substantial gainful activity between his June 2007 alleged disability onset date and his December 2012 date last insured. (A.R. 17.) The ALJ

4

determined at step two that during the applicable period David suffered from the severe impairments of spinal disorder, degenerative disc disease, diabetes mellitus, hypertension, GERD, organic mental disorder, affective disorder, personality disorder, and autistic disorder. (Id.) At step three the ALJ determined that David's impairments were not of listings-level severity. (Id. at 17-18.)

Before turning to step four, the ALJ determined that during the relevant period David retained the RFC for light work, but that he was limited to no climbing of ladders, ropes, or scaffolds; frequent climbing of ramps and stairs; and frequent balancing, stooping, kneeling, crouching, and crawling. (Id. at 19-23.) He had to avoid environments of concentrated exposure to workplace hazards. (Id.) He could perform work requiring no more than simple workplace judgment, simple work-related decisions, and simple routine repetitive tasks (with few if any workplace changes) and could not perform work requiring rapid production quotas. (Id.) Finally, his work could involve only brief and superficial interaction with the public, coworkers, and supervisors. (Id.) At step four the ALJ found that David was not able to perform any past relevant work. (Id. at 23.) But at step five the ALJ determined that through his date last insured, David was able to perform jobs that existed in significant numbers in the national economy. (Id. at 23-24.) Accordingly, the ALJ decided that David was not disabled during the relevant period and denied his DIB claim. (Id. at 24.)

## Analysis

David argues that the ALJ erred in assessing his mental and physical RFC and evaluating his subjective statements about his symptoms. (R. 11, Pl.'s Br. at 1-2.) The court reviews the ALJ's decision only to ensure that it is based on the correct legal criteria and supported by substantial evidence. *Prater v. Saul*, 947 F.3d 479, 481 (7th Cir. 2020). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation marks and citation omitted). The ALJ is required to "build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014). But this court is "not free to replace the ALJ's estimate of the medical evidence" with its own, *see Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008), and must uphold the decision even where "reasonable minds could differ concerning whether [the claimant] is disabled," *see Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

### A.   RFC Assessment

David argues that the ALJ erred in assessing his mental and physical RFC. "As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). David asserts that the ALJ failed to consider all relevant evidence regarding his mental impairments when crafting his RFC. (R. 11, Pl.'s Br. at 5-8.) Specifically, David faults the ALJ for

6

failing to consider the opinion of his treating neuropsychologist Dr. Peter Dodzik, who performed an eight-hour neuropsychological evaluation on April 11, 2013, and determined that David suffers from: ADHD; chronic, severe mood dysregulation with associated obsessive-compulsive symptoms; Asperger's syndrome; anxiety; severe depression; "[p]roblems with [his] primary support group"; and "[o]ccupational problems." (A.R. 1140-48.) Dr. Dodzik opined that his mental impairments cause social deficits, difficulty concentrating, persisting, and maintaining pace, slow processing, obsessive thoughts, and lack of organization. (Id.)

Because Dr. Dodzik issued his opinion nearly four months after the applicable disability period, which ended on December 31, 2012, the ALJ declined to consider or afford any weight to it. (Id. at 22.) The ALJ considered David's February 2008 hospitalization during which he was depressed with "intense suicidal thoughts with plan and intent." (Id. at 21, 544-45.) The ALJ also discussed David's "long history" of ADHD and autism, noting that he appeared to have a high level of functioning. (Id. at 21.) The ALJ concluded, however, that David's "mental impairments did not appear to have a significant impact" on him until 2013, after his date last insured. For support the ALJ pointed to 2008 and 2009 treatment records that, according to him, did not reveal significant mental abnormalities and noted that David reported new medications helped improve his mood. (Id. at 21.) The ALJ also cited David's treatment records from routine diabetes visits, which showed normal psychiatric examinations. (Id.)

7

David argues that the ALJ erred in assessing his mental RFC because he did not discuss, let alone account for, limitations Dr. Dodzik included in his April 2013 opinion. (R. 11, Pl.'s Br. at 5-6.) The government responds that the ALJ provided substantial evidence to support his decision and asserts that the ALJ was justified in disregarding Dr. Dodzik's opinion because it post-dated David's insured period by four months. (R. 23, Govt.'s Mem. at 2-10.) The government further defends that even if the ALJ erred by not considering Dr. Dodzik's opinion, such error was harmless because the opinion "soundly refutes [David's] disability claim." (Id. at 11-12.) David replies that despite the date of Dr. Dodzik's opinion, the limitations he assessed apply to the disabling period because "no intervening event" occurred after David's date last insured that suddenly changed his mental condition, and Dr. Dodzik confirmed the lifelong nature of David's Asperger's and ADHD and related symptoms. (R. 25, Pl.'s Reply at 1-2.) In any event, David points out the ALJ's inconsistency in considering the consulting examiner's findings from February 2016, while at the same time dismissing Dr. Dodzik's findings from years earlier. (Id. at 1 (citing A.R. 21).) David also argues that the ALJ's error was not harmless because, according to him, a proper evaluation of Dr. Dodzik's opinion would have yielded a different result. (Id. at 4.)

The court agrees with David that the ALJ erred by not considering Dr. Dodzik's opinion, and this court cannot say that such error was harmless. While it is true that Dr. Dodzik rendered his opinion several months after the close of the applicable period, the ALJ was not permitted to ignore Dr. Dodzik's opinion on David's mental

impairments and the related limitations David experienced during the relevant period. *See Parker v. Astrue*, 597 F.3d 920, 924 (7th Cir. 2010) (finding ALJ erred by "mak[ing] no attempt to evaluate the[] gravity and the[] impact" of mental impairment evidence post-dating applicable period). In his opinion, Dr. Dodzik noted that David has suffered "all his life" from mental impairments, including ADHD and secondary effects of executive functioning, organization, and motivation, as well as Asperger's syndrome and secondary effects of obsessiveness and social deficits. (A.R. 1143-44.) In the same discussion Dr. Dodzik also mentioned David's "severe mood dysregulation and rather severe depression." (Id.)

Given Dr. Dodzik's opinion that David's mental symptoms were longstanding, the ALJ should have analyzed whether such evidence was relevant to the assessment of David's functional limitations and explained his decision in this regard. *See Lothridge v. Saul*, 984 F.3d 1227, 1232-34 (7th Cir. 2021) ("An ALJ need not address every piece of evidence, but she may not ignore entire swaths of it that point toward a finding of disability."). The ALJ also should have explained why the consulting examiner's findings from February 2016 were relevant but Dr. Dodzik's opinion from April 2013 was not. *Id.* at 1234 ("[A]n internally inconsistent opinion by an ALJ is likely to fail to build a logical bridge between the evidence and the result."). Without such analysis, the court cannot uphold the ALJ's mental RFC assessment. *See id.* at 1233.

The government contends that the longstanding nature of David's mental impairments undermines his argument that he is disabled. (R. 23, Govt.'s Mem. at

9

11.) The ALJ acknowledged as much, the government argues, when he determined that David was able to complete medical school and become a licensed physician despite "a long history of attention deficit disorder and autism." (Id. (citing A.R. 21-22).) David counters that as a practicing physician he was not able to maintain the same pace as his colleagues, as he testified, and that the ALJ overlooked Dr. Dodzik's assessed limitations that contributed to David's diagnosed "[o]ccupational problems." (R. 25, Pl.'s Reply at 1-2 (citing A.R. 44-45, 1142, 1147).) In particular, Dr. Dodzik found that David had "elevated levels of aggression, affective instability, identity problems, negative relationships, mood disorder, and difficulty with self-perception and interpersonal relationships," resulting in work-related difficulties. (Id.) Because the ALJ failed to acknowledge or engage with Dr. Dodzik's assessed limitations, the court cannot conclude that David's prior achievements demonstrate the capacity to work full time during the relevant period. *See Parker*, 597 F.3d at 921; *Lothridge*, 984 F.3d at 1233-34.

The government next argues that even Dr. Dodzik "plainly believed" David could work, which it says shows that any error by the ALJ was harmless. (R. 23, Govt.'s Mem. at 11.) For support the government points to Dr. Dodzik's recommendation that David "update[] his CV" and "look[] for work." (Id. (citing A.R. 1145).) As an initial matter, the ALJ did not render such a finding in his decision, or even address Dr. Dodzik's opinion. David is therefore correct that the government's argument amounts to post-hoc rationalization. (R. 25, Pl.'s Reply at 3 (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943)).) Regardless, the government

10

plucks the quoted language from a broader recommendation by Dr. Dodzik that despite David's inability to "maintain a consistent schedule . . . work at the speed that his IQ should allow, and . . . organiz[e]," David should "treat[] his life as a job" and "get[] up at a consistent time, updat[e] [his] CV, [and] look[] for work" that might allow him to "work at home, on his own schedule, and take only as much work as he thinks he can handle." (A.R. 1145.) Elsewhere in his opinion, Dr. Dodzik explained that David had difficulty processing, completing tasks, interacting with others, and performing executive functioning skills, which in turn led him to diagnose David with "[o]ccupational problems." (Id. at 1140-45; see also id. at 1147-48.)

Contrary to the government's contention, Dr. Dodzik did not opine that David was capable of sustaining full-time, competitive work without accommodations and limitations. While it is not this "court's role to displace an ALJ's judgment by making [its] own findings about the facts," *Lothridge*, 984 F.3d at 1233-34, here the court cannot affirm the ALJ's assessed mental RFC based on arguments not advanced at the administrative level and evidence not considered by the ALJ, *see Parker*, 597 F.3d at 921 ("[W]e cannot uphold an administrative decision that fails to mention highly pertinent evidence."). Nor can the court conclude with confidence that the ALJ's error was harmless where the ALJ decided not to consider the treating neuropsychologist's opinion. *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (finding that an error is harmless "[i]f it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record").

11

David also argues that the ALJ did not adequately account for mental limitations in concentration, persistence, and pace ("CPP") and off-task time. (R. 11, Pl.'s Br. at 6-7.) Because the ALJ's treatment of Dr. Dodzik's opinion is not supported by substantial evidence, a new mental RFC assessment likely will be required on remand. As a result, the court declines at this time to address David's arguments that the ALJ's RFC failed to adequately account for David's CPP and off-task limitations.

As to the ALJ's physical RFC, David argues that the ALJ failed to explain how the evidence supported the limitations the ALJ assigned. (Id. at 8-11.) David asserts that the ALJ's discussion of the consulting physicians' opinions was "vague," and that the physical RFC he assessed "differed substantially" from the consultants' opinions. (Id.) He thus contends that the ALJ did not support his physical RFC with substantial evidence. In its response the government did not respond directly to David's arguments but rather summarized the evidence on which the ALJ relied, which it contends amounts to substantial evidence. (R. 23, Govt.'s Mem. at 2-9.) Here the court agrees with the government.

The ALJ provided adequate support for his decision that, from a physical standpoint, David was capable of performing light work with limitations during the relevant period. At step three the ALJ acknowledged David's spinal disorder but found that despite "mild" limitation in movement, the medical record revealed "no significant neurological findings." (A.R. 17-18.) The ALJ also noted other physical

impairments, including hypertension, diabetes, and GERD, but found they were generally controlled or not sufficiently severe to be disabling. (Id. at 18.)

In assessing David's physical RFC, the ALJ further discussed medical evidence relating to these impairments. (Id. at 20-22.) The ALJ found that the medical record revealed diabetes "without complication" and "benign" hypertension, GERD, and rhinitis. (Id. at 20-21.) Although David reported pain in his neck and upper extremities, and he received a diagnosis of cervical spondylosis with radiculopathy, the ALJ noted that examinations were normal, except for limited range of motion in the neck. (Id.) Musculoskeletal and neurological functioning was also normal. (Id.) Consistent with such evidence, the ALJ cited findings by consultative examiner Dr. Dean Velis, showing mild limitation in range of motion in the cervical spine but full range of motion in the joints and lumbar spine and normal gait and neurological functioning. (Id. at 21 (citing id. at 642).)

In addition to medical evidence of record, the ALJ considered reviewing physicians' opinions that David did not have severe physical impairments. (Id. at 22 (citing id. at 93-94, 108-09).) David challenges this aspect of the ALJ's decision because, in his view, the ALJ did not discuss whether the opinions were consistent with the record or why the ALJ afforded the opinions "some weight." (R. 11, Pl.'s Br. at 8.) Based on the ALJ's preceding discussion, however, it is clear that the reviewing physicians' findings were directly in line with other evidence of record cited by the ALJ. (A.R. 17-18, 21-22.) Reading the ALJ's decision as a whole, the court

13

concludes that the ALJ provided substantial evidence for his decision to accord some weight to the reviewing physicians' opinions. (Id. at 20-22.)

David argues that the ALJ erred by giving some weight to the reviewing physicians' opinions, while at the same time finding David more limited physically. (R. 11, Pl.'s Br. at 9.) In other words, David argues that because the reviewing physicians found no physical limitations, and the ALJ limited David to light work with additional restrictions, the ALJ's physical RFC cannot stand. (Id.) The government responds that the reviewing physicians' findings that David has no severe physical impairments supports the ALJ's assessment that David can perform light work. (R. 23, Govt.'s Mem. at 5.) Additionally, the government points to well-established law in this circuit finding that "an ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." (Id. at 6 (quoting *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007 (quotations omitted)).) The court agrees with the government that David's argument here is without merit. The ALJ has the "final responsibility" for assessing the RFC and need not rely on any one physician's opinion. *Fanta v. Saul*, 848 Fed. Appx. 655, 658 (7th Cir. 2021). Because the ALJ supported his physical RFC assessment with substantial evidence, the court must affirm this aspect of the decision. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019).

### B.  Symptom Assessment

David argues that the ALJ erred in evaluating his subjective symptom allegations. An ALJ's symptom evaluation is entitled to great deference because of

the ALJ's ability to observe firsthand the believability of the claimant's symptom descriptions. *See Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014). As such, a reviewing court may only reverse a symptom assessment where it is "patently wrong." *Id.* at 816. The ALJ may not disregard subjective complaints "solely because they are not substantiated by objective medical evidence," *Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015), and must consider factors such as medication efficacy and side effects, daily activities, treatment received, and precipitating pain factors in assessing the severity of the claimant's symptoms, SSR 16-3p, 2017 WL 5180304, at *7-8 (Oct. 25, 2017). The court will not disturb an ALJ's evaluation of a claimant's symptom description if it is logically based on specific findings and evidence in the record. *See Murphy*, 759 F.3d at 815.

As an initial matter, David contends that the ALJ used an incorrect standard of review to evaluate his statements concerning his symptoms. (R. 11, Pl.'s Br. at 11-12 (citing A.R. 20).) He asserts that the ALJ applied the "entirely consistent" standard, rather than a preponderance of the evidence standard, thereby necessitating remand. (Id.) The government correctly points out that courts have rejected such an argument where the ALJ's analysis tracked the correct standard of determining whether the objective medical evidence and other evidence substantiated the symptom statements. (R. 23, Govt.'s Mem. at 3 (collecting cases)); *see also Harris v. Saul*, 835 Fed. Appx. 881, 886 (7th Cir. 2020). Here the ALJ's use of the "entirely consistent" standard was harmless, at least with respect to his evaluation of David's statements regarding his physical symptoms, because he

considered the applicable factors in assessing the severity of David's symptoms and made specific findings to support his decision with substantial evidence.

The ALJ considered the objective medical evidence relating to David's physical impairments in assessing his symptoms. (A.R. 20.) The ALJ acknowledged David's reports of pain in his neck and upper extremities and medical evidence revealing "diabetes mellitus without complication, benign essential hypertension, GERD, rhinitis, depression, and pure hyperglycemia," as well as cervical spondylosis with radiculopathy. (Id. at 20-21.) The ALJ nonetheless found that physical, musculoskeletal, and neurological examinations generally were normal. (Id. at 21.) In February 2009 David had mild paresthesia in his arms but normal strength. (Id.) More than a year later, in July 2010, an MRI of David's cervical spine demonstrated multilevel degenerative changes at C3-C4 and C6-C7. (Id.) In August 2011 David had limited range of motion in his neck. (Id.) But 2011 and 2012 progress notes reported "minimal objective findings on examination," according to the ALJ. By 2016 consultative examiner Dr. Velis reported that David had only mild limitation in range of motion in the cervical spine and full range of motion in the joints and lumbar spine and normal gait and neurological functioning. (Id. at 21 (citing id. at 642).) The ALJ thus supported his physical symptom evaluation with specific reasons supported by the objective medical evidence.

The ALJ also addressed opinion evidence from the reviewing physicians, an absence of medical source statements for the applicable period, and records showing minimal treatment to support his assessment of David's statements regarding his

physical symptoms. (Id. at 21-22.) David contends that the ALJ erred by not discussing activities of daily living and determining whether they were consistent with his symptom statements. (R. 11, Pl.'s Br. at 14.) Even David concedes, however, that the ALJ was not required to address each factor in evaluating his subjective claims. (R. 25, Pl.'s Reply at 12 (citing R. 23, Govt.'s Mem. at 15).) Given the many reasons articulated by the ALJ to support his assessment of David's physical symptoms, the court finds nothing "patently wrong" with his analysis. *See Burmester*, 920 F.3d at 510-11.

## Conclusion

For the foregoing reasons, David's motion for summary judgment is granted, the government's is denied, and the matter is remanded for further proceedings.

**ENTER:**

_____
**Young B. Kim
United States Magistrate Judge**